The STATE of Ohio, Appellee,

v.

BANKS, Appellant.

[Cite as *State v. Banks* (1991), 71 Ohio App.3d 214.]

Court of Appeals of Ohio,
Seneca County.

No. 13–89–41.

Decided Feb. 26, 1991.

*David L. Remy,* for appellant.

*Paul F. Kutscher, Jr.,* Prosecuting Attorney, and *Elaine J. Knutson,* for appellee.

SHAW, Judge.

This is an appeal from a judgment of conviction and sentence entered in the Court of Common Pleas of Seneca County, wherein defendant, John Neil Banks, was found guilty in a jury trial of one count of rape and one count of gross sexual imposition, violations of R.C. 2907.02(A)(1)(b) and 2907.05(A)(3), respectively. The rape charge involved defendant's sexual conduct with his daughter from December 1988 through May 21, 1989. The gross sexual

imposition charge involved defendant's sexual contact with the same daughter on May 21, 1989. The defendant's daughter was less than thirteen years of age at the time of the incidents.

Defendant assigns three errors to the judgment as follows:

I. "The trial court erred when it permitted the state to present rebuttal testimony regarding prior alleged sexual activity of the appellant."

II. "Appellant's conviction for rape * * * is against the manifest weight of the evidence."

III. "Appellant was denied effective assistance of counsel * * *."

In his first assignment of error, defendant argues that the trial court committed prejudicial error in allowing two rebuttal witnesses for the state to testify as to prior instances of alleged sexual activity with the defendant. Although no objection to the introduction of this evidence was made at trial, defendant argues that this court should take notice of the alleged error as "plain error" pursuant to Crim.R. 52(B). For the reasons that follow, we find that the evidence, to which defendant now objects, was properly admitted as rebuttal evidence in this case.

█  At trial, the defendant took the witness stand in his own behalf. Upon *direct* examination, when specifically questioned by defense counsel regarding the charges, defendant testified in three separate instances as to his innocence as follows:

"There is no truth to that, I haven't, never in my entire life ever had sex with any child, with any person that was not of legal age and without their consent."

" * * *

" * * * As God is my witness, I have never had sexual contact with my daughter or with any child under the age of 18 years old."

" * * *

"And you hear me now, I did not, and I repeat, I did not have any type of sexual intercourse in any way with my daughter or any minor child."

When questioned, upon cross-examination, regarding prior sexual activity with the two witnesses who subsequently testified on rebuttal, defendant denied any sexual activity with the girls and further testified, "I've stated in my testimony, I have never ever had sexual contact or sexual intercourse, any type of sex-related activities with any child, I have never been with anyone that has not been of legal age and without their consent."

Proceeding further in this line of defense, *defendant* called as a witness, Denise Renee Potter, who testified on *direct* examination in relevant part as follows:

"Q.  Do you know this guy here, the defendant, John Banks?

"A.  Yes, I do.

" * * *

"Q.  How long did you date?

"A.  Approximately three months.

"Q.  During that time, please don't think I'm prying, but this has something to do with the case, sexual preferences and activity, were you and John sexually intimate?

"A.  Yes, we were.

"Q.  Did you detect in your relationship any perversion or strangeness about John?

"A.  No, I did not.

"Q.  Did you ever see him around children at all?

"A.  Yes, I have.

" * * *

"Q.  Children you say, were they boys or girls.

"A.  Girls.

"Q.  What ages?

"A.  I can't answer that, I don't know.

"Q.  Any approximate ages?

"A.  Between five and ten.

"Q.  Are you familiar with the charges here against John?

"A.  Yes, I am.

"Q.  Have you ever known him, personally known him to engage in such conduct?

"A.  No, I do not."

On rebuttal, the state called two witnesses who testified regarding alleged prior acts of sexual activity with the defendant. The first witness, who was defendant's daughter by a marriage prior to his marriage to the victim's mother, testified as to a single incident that occurred when she was four years old, wherein defendant "put his penis around [the witness's] vagina area." The second witness, who was the daughter of defendant's former girlfriend,

testified that on three separate occasions, when she was approximately five years old, defendant touched her vagina with his penis and his fingers.

To substantiate his claim of error, defendant cites the Ohio Rape Shield Law as contained in R.C. 2907.02(D) and 2907.05(D). The pertinent portions of the cited statutes read as follows:

"Evidence of specific instances of the defendant's sexual activity * * * shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against defendant under section 2945.59 of the Revised Code [1] * * *."

In addition, defendant refers to the limitation contained in Evid.R. 404(B) that:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Finally, defendant argues that the rebuttal testimony was in direct contravention of Evid.R. 608(B), which provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence."

Defendant is correct in his assertion that the rebuttal testimony cannot be justified as proof of any of the enumerated factors contained in R.C. 2945.59 or Evid.R. 404(B). However, we do not believe that the other acts testimony was introduced in this case for the purpose of establishing the factors set forth in R.C. 2945.59 or Evid.R. 404(B) and, thus, there was no violation of these evidentiary limitations.

Moreover, we believe that the circumstances that evolved in the trial of this matter are clearly distinguishable from recent cases construing Evid.R. 608(B) as proscribing the admission of extrinsic proof of specific instances of prior acts of misconduct for the sole purpose of impeaching the defendant's credibility. For example, in *State v. Kamel* (1984), 12 Ohio St.3d 306, 12 OBR

---

**1.** R.C. 2945.59 provides that: "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

378, 466 N.E.2d 860, the decedent's parents, Dr. Mouhamed Kamel and his wife, Khaloud, were tried for involuntary manslaughter and child endangering resulting from the death of their son. Upon cross-examination, and in direct response to questioning by the prosecutor, both parents of the decedent denied ever punishing their children by grabbing the child's ear and slapping him in the face. Dr. Kamel was further asked if he had ever meted out such punishment in a Sears, Roebuck & Co. department store. The defendant answered " * * * that he was unable to recall such an instance." *Id.* at 310, 12 OBR at 382, 466 N.E.2d at 864.

In rebuttal, the state was permitted to introduce the testimony of a witness who, approximately three or four years earlier, at a Sears store, had observed Dr. Kamel punish one of his children in the manner previously denied by Dr. Kamel on cross-examination. The Supreme Court of Ohio found that the rebuttal testimony was extrinsic evidence introduced for the purpose of impeaching Dr. Kamel's testimony on cross-examination. Thus, the court held that the evidence was inadmissible under Evid.R. 608(B).

Similarly, in *State v. Strobel* (1988), 51 Ohio App.3d 31, 554 N.E.2d 916, we concluded that the trial court erred by allowing extrinsic proof of specific instances of prior sexual conduct for the sole purpose of impeaching defendant's testimony on cross-examination that he would never touch a family member in a sexual manner. However, we made the following observation in *Strobel, supra,* at 36, 554 N.E.2d at 921, that aptly states the distinction between the circumstances in that case and *Kamel,* and the circumstances in the instant case:

"We would further note that, in our view, had the defendant himself raised the issue of sexual contact with other family members (or his aversion thereto) in his case in chief, both cross-examination and rebuttal testimony concerning that contact might well have been permissible."

A similar conclusion was reached by the court in *Kamel, supra,* upon considering rebuttal testimony concerning Mrs. Kamel's addiction to the drug Demerol. The court found that the defendants themselves raised the subject of Mrs. Kamel's drug problem and made it an issue at trial. Thus, the court concluded that, after that point, the defendants " * * * could not limit the subject to just those points of evidence which were in its favor. Rather, the topic became open to all relevant inquiry in the discretion of the trial court." *Kamel, supra,* 12 Ohio St.3d at 312, 12 OBR at 383, 466 N.E.2d at 866.

In the case before us, the defendant, in his case-in-chief, interjected the issue of his prior sexual acts into the case. Consequently, as the defendant elected to rely upon the absence of prior acts of sexual misconduct or "perversion" as a defense in his case-in-chief, the state was entitled to

introduce testimony in rebuttal to meet the defense interposed by the defendant. "[T]he state is not to be deprived thereof simply because it might tend to further establish the elements of the crime charged." *Holt v. State* (1923), 107 Ohio St. 307, 140 N.E. 349.

Likewise, as to defendant's contention that the Rape Shield Law was violated by the rebuttal testimony, we conclude that when the defendant "opened the door" to the issue of his past sexual conduct, he effectively waived the statutory limitations regarding specific instances of sexual activity. For the reasons stated, the first assignment of error is not well taken.

In his second assignment of error, defendant contends that the conviction as to the rape count was against the manifest weight of the evidence. In this vein, defendant argues that the uncorroborated testimony of the child-victim was insufficient evidence to sustain a verdict of guilty as to the rape charge. We disagree.

"[T]here exists no requirement, statutory or otherwise, that a rape victim's testimony be corroborated as a condition precedent to conviction." *State v. Gingell* (1982), 7 Ohio App.3d 364, 365, 7 OBR 464, 465, 455 N.E.2d 1066, 1069. Moreover, upon review of the record, we conclude that the testimony of the victim was substantial evidence upon which the jury could reasonably conclude beyond a reasonable doubt that defendant had engaged in sexual conduct with a person less than thirteen years of age. Under these circumstances, we will not reverse the verdict as being against the manifest weight of the evidence. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132. The second assignment of error is not well taken.

In his third assignment of error, defendant asserts that his trial counsel was ineffective in failing to request an *in camera* hearing regarding collateral evidence of his sexual activity, failing to object at trial to the testimony of the two rebuttal witnesses and failing to request separate trials on the two counts.

The standard for appellate review of a claim of ineffective assistance of counsel in Ohio is stated in *State v. Hamblin* (1988), 37 Ohio St.3d 153, 155–156, 524 N.E.2d 476, 478–479 as follows:

"In Ohio, a properly licensed attorney is presumed competent. *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 301 31 O.O.2d 567, 568, 209 N.E.2d 164, 166. The appellant bears the burden of proving that his trial counsel was ineffective. To carry this burden, appellant must show that counsel made errors so serious that counsel failed to function as the 'counsel' guaranteed by the Sixth Amendment. *Strickland v. Washington* (1984), 466 U.S. 668, 687 [104 S.Ct. 2052, 2064, 80 L.Ed.2d 674]. Appellant must also demonstrate that the

deficient performance prejudiced his defense. To establish prejudice, appellant must show that there is a reasonable probability that but for the counsel's mistakes, the result of the trial would have been different. *Strickland, supra.*"

■ R.C. 2907.02(E) and 2907.05(E) require a trial court, in either a rape or a gross sexual imposition proceeding, to conduct an *in camera* hearing prior to taking testimony or receiving evidence of any collateral sexual activities of the defendant. However, a defendant may " * * * waive his statutorily granted right to such a hearing by failing to make a timely request for it." *State v. Acre* (1983), 6 Ohio St.3d 140, 144, 6 OBR 197, 200, 451 N.E.2d 802, 805. Thus, the threshold question presented is whether trial counsel's failure to request the *in camera* hearing can be construed as "deficient performance."

■ We view counsel's failure to request the hearing as being consistent with the apparent trial strategy to rely on the absence of defendant's prior sexual misconduct as a defense to the charges. In short, if defense counsel intended to rely on this type of defense, it is certainly reasonable that he would forego a hearing to resolve the admissibility of collateral evidence of defendant's sexual activities. We do not find that, in making such a strategic decision, defense counsel failed to "function as the 'counsel' guaranteed by the Sixth Amendment". *Hamblin, supra.*

Defendant next cites defense counsel's failure to object to the testimony of the rebuttal witnesses. However, we concluded under the first assignment that no error occurred in the allowance of this testimony. There can be no claim of ineffective assistance of counsel for failure to object to evidence that is properly admitted at trial.

Finally, defendant claims that trial counsel was ineffective for failing to move for separate trials of the rape and gross sexual imposition charges pursuant to Crim.R. 14. In this regard, defendant asserts that not only was he prejudiced at trial by counsel's failure to move for severance, but that he is also prejudiced on appellate review because a request for severance is a prerequisite to raising the issue on appeal.

■ Upon review of the record, we find nothing that would lead us to conclude that but for counsel's failure to move for severance of offenses, the outcome of the proceedings would have been different. Simply put, there is nothing in this record that would support defendant's claim that a separate trial as to each offense would have resulted in a verdict of acquittal as to either charge. Accordingly, defendant's third assignment of error is not well taken.

Finding no error prejudicial to defendant as assigned or argued, the judgment of conviction and sentence of the Seneca County Court of Common Pleas is affirmed.

*Judgment affirmed.*

THOMAS F. BRYANT, P.J., and HADLEY, J., concur.